UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON SOLTIS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:18-2022 |
| v. | : | (JUDGE MANNION) |
| SCRANTON QUINCY HOSPITAL COMPANY, LLC d/b/a MOSES TAYLOR HOSPITAL | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court is a motion for summary judgment, (Doc. 28), filed by the defendant Scranton Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital ("Moses"). For the reasons set forth below, the motion will be **GRANTED** and **JUDGMENT** will be entered in favor of Moses all counts.

I. **BACKGROUND**[1]

---

[1] With very few exceptions, Soltis denies nearly every single one of Moses's undisputed facts on the basis that such facts are contained in documents which "speak for [themselves]," *see, e.g.*, Doc. 42-1, at 2, or "after reasonable investigation," she is "without sufficient knowledge for information to form a belief as to the truth" of the allegations, *see, e.g.*, Doc. 42-1, at 2. As this court has previously noted, "Denying a fact on the ground that it is based on a 'writing which speaks for itself' is not a proper denial under Local Rule 56.1." *Dalgic v. Misericordia Univ.*, No. 16-443, 2019 WL 2867236, at *1 n.1 (M.D.Pa. July 3, 2019). Similarly, "[Soltis]'s lack of

The plaintiff Sharon Soltis initiated this action on October 18, 2018, with a two-count Complaint alleging federal Age Discrimination in Employment Act ("ADEA") and Pennsylvania Human Relations Act ("PHRA") claims. (Doc. 1). Solis, a fifty-eight-year-old woman, alleges Moses discriminated against her and other older applicants because of their age. Specifically, Soltis contends she applied for pharmacist positions with Moses on three occasions but each times was passed over for a younger applicant: (1) April 5, 2017, for Night Shift Pharmacist ("Cella Position"); (2) April 21, 2017, for Clinical Pharmacist – Staff ("May Position"); and (3) May 17, 2017, for Clinical Pharmacist – Staff ("Shayka Position"). Additionally, Soltis handed her resume to a nurse recruiter, at a career fair in December 2016 but did not apply for the position ("Bui Position") through Moses's online system, Taleo.[2]

---

knowledge . . . is not sufficient to put [a] fact, stated as an undisputed fact in [Moses's] summary judgment motion, in dispute." *Berry v. Swingle*, No. 2:12-CV-0363, 2013 WL 1932717, at *4 n.2 (E.D.Cal. May 8, 2013). Consequently, these facts, to the extent they are denied on those grounds alone, will be deemed admitted.

[2] These positions are so named because of the individuals that were ultimately hired to fill them as explained more fully in the following paragraphs.

Moses's pharmacy department operates a pharmacy residency program accredited by the American Society of Health-System Pharmacists ("ASHP") which is a year-long program for pharmacists who have graduated from an accredited pharmacy program. To maintain accreditation, Moses must employ a certain number of pharmacists as qualified "preceptors" who can train and teach Post Graduate Year One residents, or "PGY1s." Moses was previously cited by the ASHP as being in "partial compliance" because it "[did] not provide consistently qualified preceptors to ensure appropriate training, supervision and guidance." ([Doc. 29-1, at 9](#)). As a result, whenever possible, Moses seeks to hire pharmacists "who can immediately serve at preceptors." ([Doc. 29-1, at 10](#)).

ASHP publishes criteria for individuals to be considered preceptors and the strongest criteria for pharmacists to be qualified as preceptors are Board Certification or completion of a PGY1 residency. ASHP will alternatively consider a pharmacist's experience in lieu of Board Certification or a PGY1 residency so long as the pharmacist has at least three years of hospital experience in a specialized setting and can meet other criteria such as spending eighty percent of his or her time in patient care. Pharmacists who have completed PGY1 residencies or who are

Board Certified are qualified to be preceptors immediately upon the commencement of their employment.

Soltis testified that age in hiring becomes a factor in the following ways. Prior to 2005, an individual could obtain a Bachelor of Science degree in pharmacy and commence working as a pharmacist thereafter. After 2005, however, higher educational institutions eliminated such degrees and began issuing Pharm.D. degrees or Doctorates in Pharmacy. Soltis maintains that any pharmacist with a bachelor's degree "inherently had to have graduated from pharmacy school prior to 2005." (Doc. 42-1, at 11). Soltis also testified that PGY1 residency programs were only created in recent years and, accordingly, any individual with such a residency must have graduated in recent years. Additionally, Soltis maintains that when she graduated from pharmacy school, Board Certification was not "prevalent nor urged in any way." (Doc. 42-1, at 12).

With respect to her credentials, Soltis did not participate in a residency program nor is she Board Certified in any pharmacy specialty. Although she acknowledges that the guidelines for becoming a Board-Certified pharmacist are not age-restrictive in any way, Soltis did not apply to sit for a board certification exam at any time between 1983 and 2016 because she "did not feel it was necessary." (Doc. 29, at 4). Soltis testified

that she believes she is currently ineligible to sit for the exam because she has a gap in employment on her resume and has not been employed by her current employer for at least four years. Consequently, Soltis could not have satisfied the criteria to become a preceptor immediately upon employment with Moses. Solis, however, maintains that employees have two years after their hire to meet the criteria required to be a preceptor.

As to Soltis's work experience, she graduated in May 1983 with a Bachelor of Science in pharmacy. After school, she worked for approximately two-and-a-half years at a hospital pharmacy where she had experience preparing IV bags, handling codes in the emergency room, and working in a labor and delivery ICU. From 1986 to 2016, Soltis worked in retail pharmacies where she performed dosing calculations on only an infrequent basis.

With respect to the Bui Position, Soltis admits she did not apply through Taleo, but instead attended a job fair in December 2016 and handed her resume to Michele Dean, Moses's Human Resources Generalist and Nurse Recruiter. Dean later indicated to Soltis that she hand-delivered the resume to Moses's Director of Pharmacy, Michele Musheno, who supervises and manages hiring decisions for Moses's Pharmacy Department.

It was later determined that Dean texted a picture of the resume to Jessica Vaccaro, another Human Resource Generalist, who subsequently shared it with Musheno. Musheno indicated she does not review resumes or letters seeking employment that are not submitted through Taleo. Thus, Musheno indicated that she did not review or consider Soltis's resume for the Bui Position. It is unclear whether Dean instructed Soltis to apply though Taleo; however, Dean testified that it is her practice to hand out brochures with instructions on how to apply through Taleo to interested individuals who come to her table at career fairs. Ultimately, Nicole Bui, a thirty-two-year-old who completed a PGY1 residency at Moses was selected for the position.

As to the Cella Position, Soltis applied on April 5, 2017; however, the position was filled by Stacy Cella, a thirty-eight-year-old internal candidate who did not complete a PGY1 residency and did not possess Board Certification. Pertinent here, Moses's Policy A.15 indicates that Moses will consider external candidates only where an open position cannot be filled from Moses's current workforce and that external candidates are generally only considered where the external candidate is better qualified, a unique technical professional skill is required, or the position is entry level. ([Doc. 29-3, at 4](Doc. 29-3, at 4)).

As to the May Position, Soltis applied on April 21, 2017. In response, Musheno emailed Soltis at 11:29 a.m. asking Soltis to contact her if she would like an interview on April 24, 2017, at 1:30 p.m. ([Doc. 29-8, at 2](#)). Musheno indicated that she also called Soltis on April 21, 2017, and on April 24, 2017, and left a voicemail, but Soltis did not return her calls. Soltis maintains that she was "unaware" of any attempts by Musheno to schedule an interview until April 25, 2017, when she checked her email. Consequently, Soltis missed the April 24, 2017, interview.

Soltis testified that she replied to Musheno's email on the morning of April 25, requesting to reschedule. ([Doc. 42-17)](#). However, Musheno testified that, despite searching her mailbox, including the spam folder, she could not locate any such email. As a result of not having heard from Soltis, Musheno indicated that she marked Soltis's application as rejected.

The position was ultimately filled by Marissa May, a thirty-two-year-old who had not completed a PGY1 residency and did not have Board Certification, but who had previously done rotations through Moses, as well as a physicians' practice group associated with Moses, and was thus familiar with the systems in place in Moses's Pharmacy Department.

As to the Shayka Position, Soltis applied on May 17, 2017. Musheno indicated that she did not consider Soltis's application for the position

because she had not received a response from Soltis regarding the May Position. The position was ultimately filled by Jared Shayka, a thirty-five-year-old, who had completed a PGY1 residency and worked at Post-Acute Medical Specialty Hospital of Scranton and Wilkes-Barre where he performed similar tasks as would be required at Moses.

Each of the listings for the positions, except for the Bui Position, stated both "PGY1 Residency completion or Board Certification required" and "PGY1 Residency completion or Board Certification required <u>or hospital experience</u>." ([Doc. 42-5, at 3](Doc. 42-5, at 3); [Doc. 42-7, at 3](Doc. 42-7, at 3); [Doc. 42-8, at 3](Doc. 42-8, at 3)) (emphasis added). Musheno testified that the section stating the former was auto-filled and could not be altered by her; however, she did input the section stating the latter. Musheno explained that she was looking for individuals with PGY1 residencies or Board Certification because those individuals were more likely to be able to qualify as preceptors, which was important so that the pharmacy department could be compliant with ASHP. Despite not having completed a PGY1 residency or having Board Certification, Soltis indicated she felt qualified for the positions and applied anyway.

## II. STANDARD

"Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant, and material if it could affect the outcome of the case." *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S.Ct. 167 (2018). In considering a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

Because ADEA and PHRA claims are analyzed under the same standard, the court will generally reference only the ADEA in this Memorandum. *See, e.g., Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500 n.3 (3d Cir. 2010). The ADEA prohibits discrimination by employers on the basis of age. *See* 29 U.S.C. §623(a)(1). The Third Circuit has indicated that the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), is used when a plaintiff does not present direct

evidence of discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Under *McDonnell-Douglas*, the plaintiff bears the initial burden of showing a *prima facie* case of discrimination. 411 U.S. at 802. To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must sufficiently allege (1) he was over forty years old; (2) the defendant took an adverse action against him; (3) he was qualified for the position in question; and (4) he was replaced by another employee sufficiently younger so as to support an inference of discrimination. *Smith*, 589 F.3d at 689.

"[T]he *prima facie* case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). This showing "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The *prima facie* burden is not "onerous." *Id.* at 253. However, to warrant this rebuttable presumption, "there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination" alleged. *O'Connor*, 517 U.S. at 311-12.

Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant "to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 689. "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (internal quotation marks omitted). "At this stage, the defendant need not prove that the articulated reason actually motivated its conduct." Id. (internal quotation marks omitted).

Once the employer does so, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Id. (*citing* F*uentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994) ). To survive summary judgment, "the plaintiff must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Although the plaintiff "need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons,"

the plaintiff must "point to weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them unworthy of credence." Simpson,142 F.3d 639, 644 (internal quotation marks omitted).

III. DISCUSSION

a. *The Bui Position*

With respect to Soltis's claims regarding the Bui Position, Moses asserts that they fail as a matter of law since Soltis admits she did not actually submit an application for the Bui Position through Taleo and, thus, was not considered by Musheno for the position. The court agrees. There is no evidence whatsoever supporting Soltis's contention she was rejected for the Bui Position due to her age where the undisputed evidence indicates that she did not actually apply for the position through the correct channel. Soltis admitted she did not know of any instance where an individual was hired by Moses by simply handing a resume to someone at a job fair without applying through Taleo. (Doc. 29-16, at 34).

Indeed, the Third Circuit has held that a plaintiff's failure to apply for a position will preclude him from establishing a *prima facie* case for

discriminatory hiring unless the applicant can show he "was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or he had a genuine and real interest in the position but reasonably believed that a formal application would be futile." *Murray v. Beverage Distribution Center*, 533 Fed.App'x 98, 102 (3d Cir. 2013). Soltis has not and cannot show either of those scenarios apply here. Put simply, Soltis did not do "everything reasonably possible to convey [her] interest in applying for [the] job" by, for example, "following precisely the procedure established by the employer for how a person applies for a job at the company" given that she did not apply through Taleo, and she does not allege that she was deterred from doing so because of discriminatory practices or that she reasonably believed to do so would be futile. *Id.* at 103 (internal quotation marks omitted and alterations adopted).

Accordingly, summary judgment in favor of Moses with respect to Soltis's claims regarding the Bui Position is appropriate and **JUDGMENT IS ENTERED** in favor of Moses and against Soltis on these claims.

b. *The Cella Position*

As to Cella Position, Moses likewise argues Soltis cannot establish a *prima facie* case since Cella was an internal candidate and it is undisputed

that Moses prefers internal candidates—a policy which Soltis admitted "makes sense." ([Doc. 29, at 9](Doc. 29, at 9)).

Soltis disagrees and argues that she has established a *prima facie* case because she has shown she was over forty and qualified for the position, but Moses did not hire her and instead hired a thirty-eight-year-old. Soltis additionally argues that Moses's reason for not hiring her—that it had an internal candidate—was a pretext since Moses also considered an additional applicant for the Cella Position, Donna Bohn, who ultimately declined it.

The court agrees with Soltis that she has established a *prima facie* case with respect to the Cella Position. However, the court also finds that Moses has set forth a legitimate, non-discriminatory reason for its decision which Soltis has not demonstrated was pretextual. As noted above, Moses's policy of preferring internal candidates is memorialized in writing and indicates that Moses will consider external candidates only where an open position cannot be filled from the current workforce and that external candidates are generally only considered where the external candidate is better qualified, a unique technical professional skill is required, or the position is entry level. ([Doc. 29-3, at 4](Doc. 29-3, at 4)). None of those three circumstances applied in Soltis's case.

Although Soltis asserts that Moses interviewed another candidate for the position, Donna Bohn, there is no evidence to support her argument. While Soltis cites a printout from Taleo stating that Bohn had an initial interview for the Cella Position, Musheno was specifically questioned about this and testified that, while she was not sure why the printout indicated otherwise, she did not interview Bohn for the Cella Position. In fact, Musheno testified that she did not interview anyone for the Cella Position, including Cella, since Cella was an internal candidate. (Doc. 42-4, at 23-24). Instead, Musheno testified that, while Bohn had applied for the Cella Position, she also applied, and was interviewed, for a clinical pharmacist position in late April 2017. (Doc. 42-4, at 24). Significantly, as Moses points out, the Taleo printout indicates that Bohn's status as having received a first interview was changed on May 4, 2017, which was six days after Cella's status was changed to hired. (Doc. 42-23, at 1).

As a result, the court cannot agree that Soltis has presented evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Moses's "proffered legitimate reason[] [such] that a reasonable factfinder could rationally find [it] unworthy of credence." *Simpson*, 142 F.3d 639, 644 (internal quotation marks omitted). Therefore, summary judgment in favor of Moses on Soltis's claims with respect to the

Cella Position is appropriate and **JUDGMENT IS ENTERED** in favor of Moses and against Soltis on these claims.

### c. *The May and Shayka Positions*

Next, as to the May and Shayka positions, Moses asserts that, while Soltis can make out a *prima facie* case of discrimination, she cannot establish Moses's reasons for not hiring her were a pretext for discrimination. Moses notes that within hours of receiving Soltis's application for the May Position, Musheno marked her application as "under consideration" and emailed Soltis offering her an opportunity to interview on April 24. Because Soltis did not respond, Musheno called Soltis, but Soltis did not appear for the interview, nor return the call or respond to the email in time for the interview. Consequently, Musheno changed the status of Soltis's application to rejected. Moses notes that just over three weeks later, Soltis applied for the Shayka Position and, having not received a response to the prior offer to interview, Musheno disqualified Soltis for that position.

Moses observes that it is undisputed that Musheno offered Soltis an opportunity to interview for the May Position—*i.e.*, she was considered for it. Pretext, Moses argues, would require evidence demonstrating that, while

Musheno offered Soltis an interview despite her lack of a PGY1 residency or Board Certification, the offer was "somehow part of an elaborate ruse to discriminate against her." ([Doc. 31, at 15-16](Doc. 31, at 15-16)). Moses argues there is no logical scenario by which Musheno's genuine offer to interview Soltis could be considered a pretext for discrimination. Although Soltis contends that she belatedly responded to Musheno's email, Moses notes that the undisputed evidence is that Musheno never received it.

Despite earlier acknowledging in her brief that, at the summary judgment stage, a court cannot weigh the credibility of evidence, ([Doc. 42, at 15](Doc. 42, at 15)), Soltis invites the court to do just that, arguing that Musheno's testimony that she did not receive Soltis's email is "simply not credible." ([Doc. 42, at 24](Doc. 42, at 24)). Citing a case from the Eighth Circuit, Soltis argues that the mailbox rule applies to email and, as such, "it must be presumed that [Soltis's] April 25, 2017 e-mail to Musheno was received." ([Doc. 42, at 24](Doc. 42, at 24)). Soltis essentially alleges that the offer to interview her was a "set up" and that Musheno did receive Soltis's after the fact email requesting to reschedule but ignored it and proceeded with her plan all along which was to hire a younger pharmacist. In this way, Soltis argues that she has established Moses's reason for not hiring her for the May Position was pretextual.

Similarly, with respect to the Shakya Position, Soltis contends that Moses utilized the false excuse of not receiving Soltis's email as a pretext to hire another significantly younger and less experienced individual.

Even if the court were to agree that the mailbox rule applies to email and presume that Soltis's email was received by Musheno, the fact remains that Moses has rebutted that presumption with undisputed testimony under oath by Musheno.[3] Moreover, even assuming Soltis had shown that Musheno received her email, Soltis's reasoning with respect to the pretext is disjointed. Soltis argues that Musheno lied about not having received Soltis's email in order to justify her decision to hire May, a "significantly younger pharmacist who was far less qualified than [Soltis]." (Doc. 42, at 24). However, had Musheno been motivated by discriminatory animus and a desire to hire only young pharmacists, there is no conceivable reason for her to have attempted to schedule an interview with Soltis. To the contrary, the undisputed evidence is that Musheno did consider Soltis for the position

---

[3] Moses points out that, unlike Musheno, Soltis did not put a read receipt or delivery tracker on her email and does not claim to have any personal knowledge of whether the email was actually received. Moses also notes that whereas Soltis made no attempts through forensic analysis or otherwise to determine whether her email was received or opened by Musheno, Moses conducted an internal search of Musheno's mailboxes and engaged a specialized software, KPMG, to determine whether the email could be found on Moses's servers but could not locate it.

and attempted to interview her, but her several attempts to contact Soltis to do so were unsuccessful. As such, Soltis has not, and cannot, show Moses's reason for its decision was a mere pretext for discrimination. The same applies with respect to the Shayka Position.

Although Soltis makes much of the PGY1 residency or Board Certification requirement, asserting that they demonstrate discriminatory animus towards older applicants, her arguments are similarly unconvincing. The fact remains that the undisputed evidence shows Musheno chose to overlook Soltis's lack of those qualifications—as it had for other pharmacists in the past—and offered her the opportunity to interview. Soltis cannot point to any evidence that the decision not to hire her was actually based on her lack of those credentials instead of the lack of a response to an offer for an interview. Further, to the extent Soltis believes those requirements were listed merely to dissuade older applicants from applying, the only evidence of record suggests the opposite since Soltis herself was clearly not dissuaded from applying for the positions and there is no evidence of record that any other pharmacists over forty were dissuaded.

Accordingly, Soltis has failed to point to evidence by which a factfinder could reasonably disbelieve Moses's reason for its decision not to hire Soltis or to believe that invidious discrimination Moses's motivating

reason. Therefore, Soltis's claims with respect to the May and Shayka Positions fail and **JUDGMENT IS ENTERED** in favor of Moses and against Soltis on these claims.[4]

IV. **CONCLUSION**

For the reasons set forth above, Moses's motion for summary judgment, ([Doc. 28)](Doc. 28), is **GRANTED**, and **JUDGMENT IS ENTERED** in favor of Moses and against Soltis on all counts of the Complaint.

An appropriate order will issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: May 18, 2021**
18-2022-01

---

[4] Although Moses devotes a section of its brief to disparate impact, in her brief, Soltis clarifies that she has alleged no such claim. Accordingly, the court will not address it.